UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF ALABAMA
MOBILE DIVISION

In re:

EUGENE SULLIVAN,  Case No.: 11-03291

Debtor.

ORDER GRANTING DEBTOR'S MOTION TO VOLUNTARILY DISMISS CHAPTER 13 PROCEEDING WITH NO INJUNCTION AND DENYING MOTION OF CLYDE BERGEMANN, INC. d/b/a ANTHONY ROSS COMPANY

Terrie S. Owens, Attorney for the Debtor, Fairhope, Alabama
David W. Hercher, Attorney for Clyde Bergemann, Inc. d/b/a Anthony Ross Company, Portland, Oregon
Kirkland Reid, Attorney for Clyde Bergemann, Inc. d/b/a Anthony Ross Company, Mobile, Alabama

This matter is before the Court pursuant to the Debtor's motion to voluntarily dismiss his Chapter 13 case. The Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court has authority to enter a final order. For the following reasons, the Debtor's motion to dismiss is due to be GRANTED and Clyde Bergemann, Inc. d/b/a Anthony Ross Company's motion is DENIED.

**FACTS**

The Debtor filed for Chapter 13 bankruptcy relief on August 15, 2011. He previously filed a Chapter 7 petition on September 22, 2010 and received a discharge on April 14, 2011. In that case, the Debtor listed, among other claims and interests, a $542,138 secured claim in favor of Greene & Markley, P.C. ("G&M") and a $246,589.27 unsecured, nonpriority claim in favor of Clyde-Bergemann Inc. d/b/a Anthony-Ross Company ("ARC"). The ARC claim was declared

1

nondischargeable on May 20, 2011 by judgment of the Bankruptcy Court.[1] It appears that the Debtor filed this "Chapter 20" case to deal with that judgment even though he would not be able to obtain a discharge of the debt, even if he completed all of his payments. The Debtor testified that his current Chapter 13 plan proposed to pay ARC incrementally through the plan with the remainder to be paid at the conclusion of the plan. ARC wants the Debtor's case dismissed with an injunction so that it can use all available state law remedies to seize the Debtor's non-exempt property.

In his current Chapter 13 case, the Debtor detailed various claims and interests. His Schedule A recited interests in three pieces of real property. First, the Debtor detailed a half-interest in a residence located at 2616 Charleston Oaks Drive West, Mobile, Alabama 36695 (the "Mobile property") worth $263,900. The Debtor's wife owns the other half-interest in the Mobile property. Second, he listed a quarter-interest in a house located at 29 Sugar Beach Drive, Santa Rosa Beach, Florida (the "Florida house") worth $73,250. Third, the Debtor listed a half-interest in a vacant lot located near the Florida house (the "Florida lot") valued at $52,000.

In Schedule D, the Debtor listed three creditors holding secured claims: (1) a $284,683 first lien against the Mobile property in favor of Chase with $27,175 broken out as unsecured, (2) a $63,260 first lien against the Florida house held by Citi Mortgage, Inc. with $14,900 listed as unsecured, and (3) a $651,000 secured lien in favor of G&M encumbering both the real estate listed in Schedule A and $1,781.50 worth of personal property. The difference between the $542,138 G&M claim discharged in the Debtor's Chapter 7 case and the $651,000 claimed as secured in the Debtor's Chapter 13 case is $108,862.

---

[1] The nondischargeability judgment is currently on appeal. CV No. 1:11-00384 (S.D. Ala). The Debtor filed a motion to stay enforcement of the judgment during the pendency of the appeal that was denied on July 13, 2011.

The Debtor's Schedule F detailed the following creditors holding unsecured nonpriority claims:

1. Three separate student loan claims in favor of Citibank in the following amounts $9,159, $10,932, and $14,347;
2. A $246,589.27 arbitration award to ARC;[2] and
3. A $21,937 student loan claim in favor of Sallie Mae.

The claims in Debtor's Schedule F sum $302,964.27. The total unsecured debt scheduled by the Debtor in his Chapter 13 case is $345,039.27—$302,964.27 from Schedule F added to $42,075 in Schedule D.

The parties agreed that the Debtor overstated the amount of secured debt he owed to G&M in his Chapter 13 schedules. The parties stipulated that the overstatement made the Debtor ineligible to file for Chapter 13 bankruptcy relief on the date of filing. If the G&M claim were listed as partially unsecured, then the Debtor's debts exceed the $360,475 amount a Chapter 13 debtor can have at filing. ARC filed a motion to dismiss on September 27, 2011 based on the Debtor's ineligibility and the Debtor followed suit with a motion to voluntarily dismiss the case on October 28, 2011. In his motion, the Debtor requested that this Court refrain from imposing an injunction against an immediate re-filing following the dismissal.

ARC filed a response on November 23, 2011 in opposition to the Debtor's request. ARC asked this Court to enter an order enjoining the Debtor from filing a new bankruptcy case until one year after the dismissal of his current Chapter 13 and to prevent the Debtor from discharging his debt to ARC in any future bankruptcy case. ARC claims that the Debtor acted in bad faith and abused the bankruptcy system by (1) filing a Chapter 13 case when he knew he was

---

[2] ARC filed an adversary proceeding in the Debtor's current Chapter 13 case seeking a determination that its debt is nondischargeable. AP: 11-00206.

ineligible, (2) misrepresenting the nature of the G&M claim in his schedules, (3) filing a second bankruptcy case in a year in which he has already obtained a bankruptcy discharge, (4) proposing a Chapter 13 plan that would allow him to keep a vacation home to the exclusion of his unsecured creditors, and (5) filing a case to specifically thwart the collection efforts of ARC with respect to their unsecured claim. ARC chose to rely on the evidence in the record in support of its assertions.

The Debtor testified in response to ARC's allegations. He explained that he thought he was eligible for Chapter 13 relief when he filed his petition. He was under the mistaken belief that the secured debt encumbering his properties attached to the entire value of those properties rather than solely to his equity. He was unaware that he could not count his wife's one-half equity interest. He testified that his misunderstanding led to the misstatements he made in his Chapter 13 schedules. He explained that he never intended to defraud his creditors or the Court and that all of his debts were legitimate. He consulted an attorney and filed the petition with advice of counsel. Further, he stated that he did not file Chapter 13 to impact the rights of any one creditor and that his plan proposed to pay ARC the entirety of its debt through the plan. According to his testimony, he filed bankruptcy in order to "keep his business afloat" while satisfying his other financial obligations. He felt that the protection afforded by Chapter 13 would allow him to accomplish that goal without attack from ARC. As of November 30, 2011, the Debtor stated that he was current on his plan payments. The Debtor testified that following a dismissal of the case he would like to file another Chapter 13 petition. He explained that he would be eligible now because G&M has released its unsecured claim against him.

**LAW**

The parties ask this Court to dismiss the Debtor's Chapter 13 petition. Dismissal is appropriate because the Debtor was ineligible for Chapter 13 relief at filing. 11 U.S.C. § 109(e) only allows debtors to file for Chapter 13 protection who, as of the date of the petition, hold "noncontingent, liquidated, unsecured debts of less than $360,475." The Debtor reported $345,039.27 in unsecured debt in his Chapter 13 bankruptcy petition—$15,435.73 below the 109(e) limit. The parties agreed that the Debtor understated the amount of unsecured debt that was owed to G&M by more than $15,435.73, thus making the Debtor ineligible to file Chapter 13. In accordance, the case will be dismissed.

However, simply granting the dismissal does not resolve every issue raised by the parties. It must also be determined whether a post-dismissal injunction against the Debtor's filing of a new bankruptcy case is appropriate. For the following reasons, the Court finds that an injunction is not warranted in this case.

Absent a finding of cause, the dismissal of a bankruptcy case does not impair a debtor's ability to immediately file a new bankruptcy petition. 11 U.S.C. § 349(a). In two specific circumstances which are not applicable here, the Bankruptcy Code mandates a 180 day injunction against a subsequent filing. 11 U.S.C. § 109(g). Bankruptcy courts also have the power to address abuses to the system, egregious conduct, or bad faith by dismissing a debtor's case and imposing an injunction against future bankruptcy filings that meets or exceeds the 180 day period detailed in § 109(g). *In re Oliver*, 323 B.R. 769, 774-75 (Bankr. M.D. Ala. 2005) (imposing a two-year ban against subsequent filings for filing seven cases in a nine-year period and filing the seventh case during a court ordered 180 day injunction). Bankruptcy court's derive this power from § 349(a) in conjunction with the inherent powers contained in 11 U.S.C. § 105(a). *In re Casse*, 198 F.3d 327 (2d. Cir. 1999).

Ultimately, the appropriateness of a post-dismissal injunction comes down to the severity of the conduct at issue. ARC asserts that the Debtor's actions with regard to his bankruptcy filing exhibit bad faith and warrant a one-year injunction following the dismissal of his case. Most courts in the Eleventh Circuit refer to the factors detailed in *In re Kitchens*, 702 F.2d 885 (11th Cir. 1983), when considering bad faith:

> (1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated bona fides, or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee.

*Id.* at 888-89.

In this case, the Debtor's conduct did not exhibit bad faith or intent to abuse the bankruptcy system. The Debtor did not intend to file his Chapter 13 petition when he was ineligible. ARC asserts that the Debtor intentionally misstated the G&M claim in order to alter his unsecured debt total. Inaccuracies or omissions in a debtor's schedules can serve as evidence of bad faith, but the degree of those inaccuracies and the intent behind them determines whether bad faith is present. *See In re Hatem*, 273 B.R. 900, 905-907 (Bankr. S.D. Ala. 2001). The Debtor testified that, at the time of filing, he did not understand that the $651,000 G&M claim he listed in Schedule D was not completely secured. He thought that the G&M debt was secured by the total market value of the three pieces of real property rather than just by his interest in those properties. The Court observed the Debtor and found his testimony credible. The Debtor's mistake was innocent. He also relied on his counsel. Thus, ARC's assertion that the Debtor

6

intentionally misrepresented the G&M claim in order to stay under the unsecured debt limit in § 109(e) is unsupported by the evidence.

Further, the Debtor's filing a second bankruptcy case within a year does not constitute bad faith. Section § 349(a) states that a dismissal will not prevent a debtor from filing a subsequent petition unless cause is present. In this case, the Court does not find cause. Chapter 13 debtors file petitions and confirm plans regularly that, for various reasons, are unworkable and require a dismissal so that they can re-file. A second filing by the Debtor for a legitimate reason does not constitute bad faith; more egregious conduct is necessary. *See In re Jones*, 289 B.R. 436, 440-41 (Bankr. M.D. Ala. 2003) (ordering a five year post-dismissal injunction for filing five bankruptcy cases in five years and "taking no meaningful action to advance a successful adjustment of [the debtor's] debts").

ARC also takes exception with the Debtor's proposed plan. ARC argues that the Debtor's plan only seeks to "defeat ARC's nonbankruptcy judgment enforcement." "Not all Chapter 13 plans which deal primarily with the adjustment of one or more secured debts should be considered as having been filed in bad faith." *In re Poston*, 78 B.R. 308, 309 (Bankr. N.D. Fla. 1987). The inquiry is whether the Debtor has a legitimate purpose other than merely delaying one creditor. *Id*. The Debtor testified that he filed Chapter 13 bankruptcy to keep his business afloat by allowing him to schedule payments to creditors so that all of his obligations would be satisfied, rather than just ARC's. The Court finds that this is a legitimate purpose of Chapter 13 bankruptcy.

ARC also argues that because the Debtor's plan included a vacation home that the plan was proposed in bad faith. The question before the court is not whether the proposed plan was confirmable, but whether the Debtor's actions warrant an injunction against subsequent filings.

7

Nonetheless, the fact that the Debtor's plan proposes to keep a vacation home does not, by itself, indicate bad faith. Rather, the totality of the Debtor's conduct must be considered. *See Hatem*, 273 B.R. at 906. The Debtor testified that his plan proposed to commit all of his income to the plan. The Debtor also testified that he is current on all his debts except ARC's, but that his plan proposed to pay ARC incrementally through the plan with the remainder to be satisfied at its conclusion. Whether he will be allowed to keep the vacation home or not can be dealt with at the confirmation hearing for the plan, if a new case is filed.

Taking the totality of the circumstances into consideration, the Court finds that the Debtor's actions with regard to his Chapter 13 petition did not amount to bad faith. He had a legitimate purpose for filing and did not intend to misrepresent the nature of any of his claims or interests. No injunction will be imposed against the Debtor's filing of a subsequent Chapter 13 petition if he chooses to do so.

ARC also requests in its motion that this Court prevent the Debtor from "discharge[ing] his debt to ARC in any later bankruptcy case." A nondischargeability determination in a previous bankruptcy case bars redetermination of that issue in a subsequent case. *In re Klaskinski*, 215 B.R. 181, 183 (Bankr. C.D. Ill. 1997); *Matter of Swate*, 99 F.3d 1282, 1288 (5th Cir. 1996). This Court previously determined that the Debtor's debt to ARC stemming from the arbitration award was nondischargeable. That decision is currently on appeal and ARC has filed an adversary proceeding in this case seeking, among other relief, a nondischargeability determination. While this motion is not the appropriate venue for a nondischargeability award, this Court recognizes that if its previous order deeming ARC's debt nondischargeable withstands appeal, that debt will not be dischargeable in this or any other bankruptcy proceeding.

It is ORDERED:

1. The Debtor's motion to voluntarily dismiss his current Chapter 13 bankruptcy case shall be GRANTED; and

2. The Debtor's case shall be DISMISSED WITHOUT PREJUDICE with no injunction against any subsequent bankruptcy filings.


Dated: December 12, 2011


_____
MARGARET A. MAHONEY
CHIEF U.S. BANKRUPTCY JUDGE